

**RECEIVED**

**JAN 27 2023**

**BY MAIL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

**ANDREW PEAL MOORE II,** *an individual*
    *Plaintiff,*

                                   **JURY TRIAL DEMANDED**

    **vs.**

**ROBERT J. KNODELL, ACTING DIRECTOR,
MISSOURI DEPARTMENT OF SOCIAL SERVICES
FAMILY SUPPORT DIVISION**
(in his individual capacity),
**JENNIFER RENNER**
(in her individual capacity),
**M. RUTH O'NEIL**
(in her individual capacity),
**KIM LYNETTE HINTON,
SUPPORTKIDS, INC.**
    *Defendants.*
_____/

<u>**VERIFIED CIVIL RIGHTS COMPLAINT**</u>

**(DECLARATORY & PRELIMINARY INJUNCTIVE RELIEF ALSO SOUGHT)**

**NOW COMES** Plaintiff Andrew Peal Moore II (hereinafter "Plaintiff Moore" unless otherwise

noted), proceeding *Pro Se*, and pursuant to the Fifth Amendment and Fourteenth Amendment to

the Constitution of the United States, the Social Security Act of 1935, as amended, the Civil Rights

Act of 1871, federal statutes 42 USC 1985(3), 42 USC § 1986, 42 USC § 1988, 42 USC § 1983,

& 18 USC § 1961-1968 of the civil Racketeer Influenced and Corrupt Organizations Act, hereby

files this civil action against the above-identified Defendants, and factually alleges the following**:**

## I. NATURE OF THE CASE

**1..**    This is a Civil Rights case brought by Plaintiff Moore, seeking compensatory and punitive damages, liquidated and/or unliquidated damages, and legal, equitable, injunctive, declaratory, and other appropriate relief for Deprivation of Rights, Conspiracy to Deprive Person of Rights or Privileges, and violations of the civil Racketeer Influenced and Corrupt Organizations Act.

**2.**    Plaintiff Moore's causes of action in this suit arises under Federal Law and the following federal statutes promulgated thereunder**:** 42 USC § 1985(3), 42 USC § 1986, 42 USC § 1988; 18 USC § 4, 18 USC §§ 1961-1968, 18 USC § 1341, 18 USC § 1343, § 18 USC 1346, 18 USC 1512(b)(c), 18 USC § 1951, and 18 USC § 1964.

**3.**    Plaintiff Moore shows the Court that this civil action, seeking compensatory and liquidated damages in conjunction with legal and equitable relief, and pursuant to Rule 38(b), Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, entitles Plaintiff Moore to a jury trial, **and Plaintiff Moore Demands Trial By Jury On All Issues So Triable.** And it is most likely that Plaintiff Moore will prevail at trial based on evidence he will present.

## II. JURISDICTION AND VENUE

**4.**    The Court has jurisdiction over this action under 28 USC § 1331, § 1337, § 1343(a)(b), § 1357, § 2201; 42 USC § 1983, 42 USC § 1985(3), § 1986, § 1988, and 18 USC § 1964.

**5.**    The Court also has jurisdiction over this action pursuant to 28 USC **§** 1332, as the matter in controversy exceeds \$75,000, diversity of citizenship exists, and the Court's jurisdiction of any pendent claims is authorized by 18(a) of the Federal Rules of Civil Procedure and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966); Venue and process are proper under 28 USC **§** 1391 and 18 USC **§** 1965, respectively.

### III. **PARTIES**

**6.**     Plaintiff Andrew Peal Moore II is an African–American Black male, 71 years of age, a natural-born citizen of the United States of America, and a citizen of the State of Florida. He presently resides at 831 Semoran Park Drive, Winter Park, Florida 32792.

**7.**     Defendant Robert J. Knodell is or was the acting Director of Missouri Department of Social Services, Family Support Division located in the State of Missouri. Defendant Robert J. Knodell is an adult citizen and resident of the State of Missouri. His work address is purportedly located at 615 Howerton Court, Jefferson City, MO 65109. He is sued in his individual capacity.

**8.**     Defendant Jennifer Renner is an employee of the Missouri Department of Social Services. Her work address is purportedly at the Office of the Director Family Support Division 615 Howerton Court, Jefferson City, MO 65109. Defendant Jennifer Renner is an adult citizen and resident of the State of Missouri. She is sued in her individual capacity.

**9.**     Defendant M. Ruth O'Neill is an employee of the Missouri Department of Social Services. Her work address is purportedly at the Office of the Director Family Support Division 615 Howerton Court, Jefferson City, MO 65109. Defendant M. Ruth O'Neill is an adult citizen and resident of the State of Missouri. She is sued in her individual capacity.

**10.**     Defendant Kim Lynette Hinton is an adult citizen and resident of the State of Missouri. She purportedly resides at 3124A Texas Ave., FL 2, St. Louis, MO 63118.

**11.**     Defendant Supportkids, Inc. is a child support collection contractor which engages in activities affecting interstate commerce in the states of Missouri, Texas, Florida, and other states. Its address is purportedly located at 4120 Freidrich Lane, Suite 175, Austin TX 78744.

## IV. CLARIFICATION OF TERMS USED IN THE COMPLAINT
## PURSUANT TO LEGAL OBLIGATION TO PLEAD FRAUD WITH PARTICULARITY

**12.**    The terms, "fraud", "fraudulent", and "defraud", whether carried out by use of the U.S. Mails,

interstate wire communications, or other methods of communication, are used in this Complaint

as defined in *Black's Law Dictionary, 2nd Edition* and *Law Dictionary, 5th Edition*, respectively:

"Fraud consists of some **deceitful practice** or willful device, resorted to **with intent to deprive another of his right,** or in some manner **to do him an injury.** As distinguished from negligence, **it is always positive, intentional.**" (emphasis added)

"The noncompliance with the legal system **by interfering with 1) the law administration or procedures, 2) not fully disclosing information or falsifying statements, and 3)** inflicting damage on an officer, juror **or witness.**" (emphasis added)

"Defraud**: to deprive a person of property** or **interest**, **estate**, or **right by fraud, deceit, or artifice; to misrepresent some fact knowing it to be false** and intending that another person be deceived as a consequence." (emphasis added)

The terms, *corrupt* or *corruption*, is used in this Complaint as defined by investopedia.com,

businessdictionary.com, oxforddictionaries.com, and corruption.askdefine.com, respectively:

"dishonest behavior by those in positions of power, such as managers or government officials."

"wrongdoing on the part of an authority or powerful party through means that are illegitimate, immoral, or incompatible with ethical standards."

"dishonest or fraudulent conduct by those in power, typically involving bribery".

## V. BACKGROUND AND SUPPORTING FACTS
## APPLICABLE TO ALL THREE COUNTS IN THE COMPLAINT

**13.**    Approximately 30 years ago, Plaintiff Moore filed for divorce against ex-spouse

Defendant Kim Lynette Hinton (hereinafter "Defendant Hinton") after discovering that she was

engaging in adultery and infidelity, and on August 9, 1993, they mutually signed and executed a

legally binding "Marital Settlement And Separation Agreement" in the Circuit Court Of St. Louis

County, Missouri, 21st Judicial Circuit, **Case Number 64549**, agreeing that Plaintiff Moore would

pay the sum of $350 per month child support for their children. **(Exhibit 1).** The Court issued to

Plaintiff Moore a Voluntary Income Assignment form, directed him to transcribe on it, "$350 per

Month", complete it, sign it, take it to his employer for processing, and file it with the Court, which

Plaintiff Moore did so on October 25, 1993 **(Exhibit 2)** in compliance to the Court's instructions,

and in compliance to Missouri Statute, 452.350.3 RS Mo, which states:

> "The provisions of section 432.030 to the contrary notwithstanding, if income withholding
> has not been initiated on the effective date of the initial or modified order, the obligated
> party may execute a voluntary income assignment at any time, which assignment shall be
> filed with the court and shall take effect after service on the employer or other payor."

**14.**     In reference to the preceding Averment, the terms of the Marital Settlement And Separation

Agreement did not state nor indicate in any way that Plaintiff Moore was to pay the sum of $700

per month child support or to make two payments of $350 per month for child support.

**15.**     Paragraphs #14 and #19 of the Agreement **(Exhibit 1)** state, in pertinent part:

> "14. ENTIRE UNDERSTANDING This Agreement constitutes the parties' entire
> understanding. They acknowledge that there have not been and are not now any
> representations, warranties, covenants, or understanding other than those expressly
> provided in this Agreement. **This Agreement is binding upon the parties' heirs,**
> **assigns, executors, and administrators."** (emphasis added)

> "19. BINDING EFFECT This Agreement shall become effective between the parties
> when executed by the parties. IN WITNESS WHEREOF, the parties have executed
> this Agreement by signing their names hereto all as of day and year last above written
> regardless of the date of execution hereof." (emphasis in the original)

**16.**     Paragraph #11 of the Agreement **(Exhibit 1)** states, in pertinent part:

> "This Agreement or any part of it **cannot be amended or modified except by an**
> **agreement in writing, executed with the same formality as this Agreement."**
> (emphasis added)

**17.**     On the same date, August 9, 1993, the Court incorporated Plaintiff Moore's and Defendant

Hinton's marital separation agreement into the Decree of Dissolution, and the Court ordered both

Plaintiff Moore and Defendant Hinton to perform the terms of the Agreement:

"It is further ordered, adjudged and decreed **that the parties perform the terms of their separation agreement attached hereto, incorporated herein, and made a part of this decree.**" (emphasis added)

**18.**     For several years, Plaintiff Moore paid $350 per month child support in compliance to the August 9, 1993 Agreement, and he even overpaid child support by $5,384.42 by the year 2007, and he does not owe any child support/arrearage to Defendant Hinton nor to anyone else.

**19.**     From 2006 thru 2010, which was approximately 13 years after the Court's decision in Case Number 64549, Defendants Hinton and Supportkids, Inc., representatives of Supportkids, Inc. and the Missouri Department of Social Services sent or caused to be sent several so-called support orders to the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida, to a Florida State agency, and also to Plaintiff Moore's former employer, Shands Jacksonville Medical Center, falsely claiming that Plaintiff Moore owed thousands of dollars in back child support/arrearage.

**20.**     In reference to the preceding Averments, Plaintiff Moore filed a Motion To Vacate in the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida, on grounds that the support orders were, *inter alia*, obtained by fraud, and he presented more than 105 Exhibits of documentary evidence, proving that he owed no child support/arrearage. **(Exhibits 3, 4)**

**21.**     The Fourth Judicial Circuit In And For Clay County, Florida, (the Honorable Circuit Judge Dan Wilensky and the Honorable Circuit Judge McCarthy Crenshaw, Jr. presiding) believed Plaintiff Moore, based on the preponderance of evidence he submitted, and it vacated the so-called support orders, **TWICE,** and directives were issued that verified Plaintiff Moore owed no past, present, or future child support ("Bal Due 0.00"), and Defendant Hinton was terminated and banned from ever receiving anymore services in the State of Florida. **(Exhibits 5, 6, 7, 8, 9, 10):**

**21(a).** In 2007, the Honorable Circuit Judge Dan Wilensky ruled **(Exhibit 6):**

"... Upon consideration, it is **ORDERED** and **ADJUDGED**
1.. Andrew P. Moore's motion to vacate foreign judgment is hereby granted.
2. The children involved in this case:
Khadijah A. Moore January 4, 1989;
Hakim A. Moore May 12, 1992.
**DONE** and **ORDERED** in Chambers at Green Cove Springs, Clay County, Florida, this
2nd day of Feb, 2007."

**21(b).** A response letter dated November 9, 2007 by Vice President and Chief Counsel for

Shands Jacksonville Medical Center, **(Exhibit 11)** stated, in pertinent part**:**

"Pursuant to my notice of the Order of Clay County, Florida Court vacating the Foreign
Judgment, which appears regular on its face, Shands agrees that it is now obligated to cease
withholding funds from your paychecks as previously directed in the Notice. I have so
advised Ms. Drummond and the paycheck you receive this week should so reflect. Further,
Shands will refrain from any future withholding unless and until such time as Shands is
directed to do otherwise by a court of competent jurisdiction. Should you have any further
questions or concerns regarding this matter, please direct them to myself.

Very truly yours,
Charles Camff
Vice President and General Counsel"

**21(c).** In 2012, the Honorable Circuit Judge McCarthy Crenshaw, Jr. **(Exhibit 10)** ruled**:**

"As alleged by Respondent [Andrew Moore], it now seems clear to the Court that the
Petitioner [Kim Hinton] is attempting to give validity to a foreign support order which
has previously been vacated by a previous 2007 Order of this Court dated February 2,
2007, in Court Case Number 10-2006-DR-2128." "Based upon review of the court files
and the pleadings in case number 2006-DR-2128, the Court finds that the foreign support
order the petitioner now seeks to register for enforcement in this file 2010-DR-2393 is
clearly and unequivocally the same foreign support order this court vacated following a
hearing held on January 11, 2007." "..." (emphasis in the original)

"The Court believes the 'Order Granting Motion to Vacate Foreign Judgment' entered
by this Court on February 2, 2006, after a hearing on the Respondent's Motion, bars any
subsequent claim to child-support arrearages between these two parties." (emphasis in
the original)" "In his 2006 Motion, Mr. Moore contested the validity and enforcement
of the foreign registered order and sought to vacate the registration alleging: (1) the
issuing tribunal lacked personal jurisdiction over Mr. Moore; the foreign support order
was obtained by fraud; and full or partial payment had been made. A hearing was held
on January 11, 2007. On February 2, 2007, this Court entered an 'Order Granting Motion

to Vacate Foreign Judgment.' The Order does not specify the grounds that form the basis for vacating the foreign judgment. Notably, however, it was Mr. Moore's Motion which prompted both the hearing and the 'Order Granting Motion to Vacate Foreign Judgment.' Respondent's Motion asserted several defenses pursuant to to Florida Statute Section 88.6071, including that the foreign support order was obtained by fraud and that full or partial payment had been made. ..."

"The general principle behind the well-established doctrine of *res judication* is that a final judgment by a court of competent jurisdiction puts to rest every justiciable, as well as every actually litigated issue. ... " "Thus, in the Court's view, the 2006 'Order Granting Motion to Vacate Foreign Judgment.' is conclusive as to all matters which were or *could have been determined*. Therefore, under *res judicata* principles, this Court's Order barred any subsequent claim for child-support arrearage between these same two parties as those as those arrearages could have been, and were in fact, determined in the 2006 proceeding." "..." "Since Petitioner did not appeal the 2006 order, she cannot now re-litigate the issue of child-support arrearages by filing the same petition four years later." (emphasis in the original)

**21(d).**  In 2011, the Florida State Agency's Decision **(Exhibit 12)** stated, in pertinent part:

"The record reflects that the claimant [Andrew Moore] **does not have current child support obligations and does not have an arrearage for child support obligations.** (emphasis added). A certified child support order was not submitted by the Department of Revenue or the Agency establishing that the claimant has any child support obligations. Therefore, the Agency will not deduct and withhold any amount from the claimant's unemployment benefits for child support purposes".

**21(e).**  In 2012, the Florida State Agency's Decision **(Exhibit 13)** stated, in pertinent part:

"**The record reflects that the claimant is not required to pay child support obligations pursuant to a January 9, 2012 order entered by the Clay County Circuit Court.** Therefore, no amount shall be withheld from the claimant's benefits for child support obligations." (emphasis added).

**22.**  In 2013, one or more employees at the Missouri Department of Social Services arbitrarily

"ordered" the U.S. Social Security Administration to withhold and deduct at least $377 per month

from Plaintiff Moore's monthly social security retirement benefits payments without a hearing and

without submitting any legitimate court support order in defiance to the August 9, 1993 decision

entered by the Circuit Court of St. Louis County, Missouri, 21st Judicial Circuit and the January

9, 2012 decision entered by the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida. **(Exhibits 1, 2, 5, 6, 7, 8, 9, 10)**

**23.**     Defendant Hinton never filed an appeal of the decision of the Circuit Court of St. Louis County, Missouri, 21st Judicial Circuit, nor the decisions of the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida, and Defendants (all of them) are interfering with the due process laws and fraudulently attempting to rely on an old administrative case that closed more than two decades ago in 2001, thus Plaintiff Moore alleges that all such conduct by the Defendants clearly constitutes "fraud on its face". (***See*** **Exhibit 42).**

**24.**     Plaintiff Moore was a party and witness during official proceedings: in the Circuit Court of St. Louis County, Missouri, 21st Judicial Circuit in 1993, in the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida from 2006 thru 2012, at the Florida state agency from 2010 thru 2012, and at Missouri Department of Social Services, Family Support Division in 2022.

**25.**     Based on the foregoing cited facts, Plaintiff Moore shows this Honorable Court that he proved he owed no child support/arrearage a long time ago, and he proved it **FIVE TIMES.**

## VI.  CAUSES OF ACTION

### COUNT I

### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS AND DEPRIVE PERSONS OF RIGHTS AND PRIVILEGES UNDER 42 USC § 1985(3)

(Violators sued in this Count: Robert J. Knodell, Jennifer Renner, M. Ruth O'Neill in their personal capacity, Kim Lynette Hinton and Supportkids, Inc.)

**26.**     Plaintiff Moore re-alleges & incorporates Averments 13 thru 25 as though rewritten herein.

**27.**     Plaintiff Moore is a member of a group or class within the meaning of 42 USC § 1985(3); specifically, he is a member of the African–American racial group or class.

**28.**     Defendants Hinton, Robert J. Knodell, Jennifer Renner, M. Ruth O'Neill, Supportkids, Inc. and its agents Richard Boudreau, Genaro Pineda, Rico Vincent, Sam Boyd, Shannon Walker-Koi, Reshila Sheard, and Ginny Stoner, and certain representatives, agents, or employees of Missouri Department of Social Services whose identities are unknown at this time (pending opportunity for discovery), and Systems And Methods, Inc., which is purportedly located in Jefferson City, Missouri, conspired for the intent or purpose to deprive Plaintiff Moore of the equal protection of the laws or of equal privileges and immunities under the laws.

**29.**     Defendants worked a denial of Plaintiff Moore's rights, privileges, or immunities secured by the Constitution of the United States or by Federal Law; specifically, Defendants conspired to, *inter alia*, steal money from Plaintiff Moore and rob him of more than $360,000, illegally abrogate or vitiate the August 9, 1993 decision of the Circuit Court Of St. Louis County, Missouri, 21st Judicial Circuit, Fourth Judicial Circuit for Plaintiff Moore to pay the sum of $350 per month child support, to send falsified and fraudulent so-called support orders and falsified support calculation documents to Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida, to a Florida State unemployment agency, and to Plaintiff Moore's former employer, Shands Jacksonville Medical Center, to falsely indicate the Circuit Court of St. Louis County, Missouri, 21st Judicial Circuit, ordered Plaintiff Moore to pay the sum of $700 per month child  support.

**30.**     Defendants conspired to send fraudulent correspondence to Plaintiff Moore's address via the U.S. Mails and falsely claim that he was delinquent in his child support obligations, conspired to falsely claim that he owed up to $278,672.87 in back child support, threaten him that if he did not pay up that his income would be garnished, that liens would be placed on his property and assets, that his driver's license would be suspended, that a bench warrant would be issued to arrest

pg. 10

him, and that other actions would be taken against him if he didn't pay up. **(Exhibits 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32)**

**31.** Defendants conspired to order the Social Security Administration to withdraw and deduct at least $377 per month from Plaintiff Moore's social security retirement benefits payments and conspired to do so without a legitimate court support order and before Plaintiff Moore was ever given a hearing for which he is legally entitled to under the U.S. Constitution. **(Exhibits 14, 15)**

**32.** Defendants conspired to effectuate the issuance of a fraudulent Income Withholding Order against Plaintiff Moore and falsely claim that he owed $58,858.13 in child support arrearage, and they conspired to send it to his present employer, AdventHealth, and order it to withhold and deduct nearly $1,000 per month from his income. **(Exhibit 34)**

**33.** Defendants, by their unlawful acts, knowingly and willingly and acting in concert, tacitly or explicitly agreed in a "meeting of the minds" and/or by phone, in person, by mail or email to engage in plots and schemes and participate in unlawful conduct, and/or they tacitly or explicitly agreed to perform certain lawful acts in an unlawful manner for the purpose or intent to deprive Plaintiff Moore of his constitutional rights and equal protection and privileges under the laws, to deprive him of his rights and privileges under the U.S. Social Security Act, as amended, and to deprive him of having and exercising rights and privileges of a citizen of the United States.

**34.** Defendants engaged in this 42 USC § 1985 conspiracy in concert with one another as well as with non-defendant conspirators Richard Boudreau, Genaro Pineda, Rico Vincent, Sam Boyd, Shannon Walker-Koi, Reshila Sheard, Ginny Stoner, non-defendant conspirators at Missouri Dept of Social Services, and Systems And Methods, Inc. purportedly located in Jefferson City, Missouri.

**35.**     Two or more of the Defendants did, or caused to be done, acts in furtherance of the objects of the conspiracy whereby Plaintiff Moore was injured in his person or property or deprived of having and exercising rights or privileges of a citizen of the United States:

**35(a).**     From 2006 through 2012, Defendants Hinton and Supportkids, Inc., in concert with non-defendant conspirators Richard Boudreau, Genaro Pineda, Rico Vincent, Sam Boyd, Shannon Walker-Koi, Reshila Sheard, Ginny Stoner, Systems And Methods, Inc. and certain non-defendant conspirators employed at Missouri Department of Social Services, sent fraudulent correspondence to Plaintiff Moore's address via the U.S. Mails, falsely claiming that he was delinquent in his child support obligations, falsely claimed he owed up to **$278,672.87** in child support, threatened him that if he did not pay up that his income would be garnished, that liens would be placed on his property and assets, that his driver's license would be suspended, that a bench warrant would be issued to arrest him, and that other actions would be taken against him if he didn't pay up. **(Exhibits 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32)**

**35(b).**     In 2006 and again in 2010, Defendants Hinton and Supportkids, Inc., in concert with un-identified non-defendant conspirators employed at Missouri Department of Social Services, sent or caused to be sent two fraudulent so-called support orders or other fraudulent documents to the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida for enforcement, which falsely indicated that Plaintiff Moore owed many thousands of dollars in child support.

**35(c).**     About in 2011, Defendants Hinton and Supportkids, Inc., in concert with unidentified non-defendant conspirators at Missouri Department of Social Services, conspired to send or cause to be sent fraudulent "Support Calculations Worksheet" & "Support Calculation Summary" documents from the Missouri Department of Social Services Family Support Division, to the

Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida that were falsified to falsely indicate that the Circuit Court Of St. Louis County, Missouri, 21st Judicial Circuit, in Case Number 64549, ordered Plaintiff Moore to make **two payments** of $350 per month child support and that Plaintiff Moore owed **$25,447.14** in child support. **(Exhibit 33)**

**35(d).**    In reference to the preceding Averment, Defendant Hinton and Defendant Supportkids, Inc., in concert with one or more non-defendant conspirators, caused a narrative to be inserted on the 4th page of the falsified "Support Calculations Worksheet" & "Support Calculation Summary" documents, which indicated that support payments were to be redirected from the Missouri Department of Social Services Family Support Division and sent to Supportkids, Inc. and one of its agents or representatives, Richard Boudreau. **(Exhibit 33, 4th page)**

**35(e).**    About in 2010 and 2011, Defendant Hinton and Defendant Supportkids, Inc., in concert with unidentified non-defendant conspirators employed at Missouri Dept of Social Services sent or caused to be sent fraudulent documents to a Florida unemployment state agency, without any legitimate or certified court support order and without a hearing, falsely claimed that Plaintiff Moore owed thousands of dollars in child support/arrearage, which resulted in the garnishment of Plaintiff Moore's unemployment compensation benefits payments. **(Exhibits 12, 13)**

**35(f).**    About in March or April 2011, Defendant Hinton and Defendant Supportkids, Inc., in concert with non-defendant conspirators at Missouri Dept of Social Services, sent or caused to be sent fraudulent documents to the State of Florida Dept of Highway Safety & Motor Vehicles, causing it to issue an order to revoke, suspend, or cancel Plaintiff Moore's driver's license.

**35(g).**    In reference to the preceding Averment, the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida, stayed the Order of License Revocation, Suspension, or Cancellation

pg. 13

upon motion by Plaintiff Moore, as he presented preponderant and clear & convincing evidence which revealed that he owed no past, present, or future child support. **(Exhibit 9, page 4)**

**35(h).**    About in August 2013 or earlier in 2013, Defendant Hinton and Defendant Supportkids, Inc., in concert with unidentified non-defendant conspirators employed at Missouri Department of Social Services, caused to be sent fraudulent documents to the U.S. Social Security Administration which falsely indicated that a court of law ordered Plaintiff Moore to pay child support/arrearage in Case Number 64549, and falsely indicated that Plaintiff Moore was delinquent in his child support obligations, and the Social Security Administration  was ordered to withdraw at least $377 per month from Plaintiff Moore's social security retirement benefits payments, and as of to date more than $42,000 have been illegally withheld and deducted from Plaintiff Moore's monthly social security retirement benefits payments. **(Exhibits 14, 15)**

**35(i).**    Defendant Robert J. Knodell, with his full knowledge that Plaintiff Moore did not owe any child support arrearage, designated Defendant Jennifer Renner to manufacture an arbitrary and fraudulent Income Withholding Order, falsely indicating that Plaintiff Moore owed **$58,858.13** in child support arrearage, and send it to his employer, AdventHealth, and order AdventHealth to withhold and deduct up to $980.97 per month from Plaintiff Moore's income.

**35(j).**    In concert, on or about May 19, 2022, Defendant Jennifer Renner issued the fraudulent Income Withholding Order, which has no credible nor legal basis, the contents of which falsely indicate that Plaintiff Moore owed $58,858.13 in child support arrearage, and it was sent to his present employer, AdventHealth, located in Florida, ordering AdventHealth to withhold and deduct up to $980.97 from Plaintiff Moore's income per month until further notice. **(Exhibit 34)**

**35(k).** Defendant Robert J. Knodell designated Defendant M. Ruth O'Neill to draft a fraudulent written Decision against Plaintiff Moore regarding the Income Withholding Order, and in concert, Defendant M. Ruth O'Neill committed massive fraud by making numerous false statements in her Decision and omitting and concealing many facts and the preponderance of evidence that Plaintiff Moore presented, as she made the following false statements in her Decision. **(Exhibit 35):**

**35(k)(1).** Defendant M. Ruth O'Neill, with her full knowledge that Plaintiff Moore did not owe any child support arrearage, dishonestly and falsely indicated in her Decision that the Missouri Dept of Social Services Family Support Division was authorized to issue the $58,858.13 Income Withholding Order on May 19, 2022 and that its determination "is based upon the evidence and testimony presented by the parties, as well as the Agency's evidence", while she simultaneously omitted and concealed in her Decision the numerous evidentiary Exhibits that Plaintiff Moore presented which together proved he did not owe any child support/arrearage – Plaintiff Moore's Exhibits that Defendant M. Ruth O'Neill concealed**:** Exhibits C3, C4, D, D1, E1, E2, E3, E4, E5, E6, E7, F, G, G2, K1, L1, L2, M, M2, M3, M4, N, O, P, PP, Q, R, T, T1, and T2.

**35(k)(2).** Defendant M. Ruth O'Neill dishonestly and falsely indicated in her Decision that the Agency had credited Plaintiff Moore with paying $60,125.48 in child support.

**35(k)(3).** Defendant M. Ruth O'Neill dishonestly and falsely indicated in her Decision that Plaintiff Moore had a child support arrearage of $103,652.97.

**35(k)(4).** Defendant M. Ruth O'Neill viciously lied in her Decision when she falsely indicated that Plaintiff Moore testified that he "believed the orders from the Florida court constitute a modification of the child support order in the case and that he should not owe any further support",

pg. 15

with her full knowledge that Plaintiff Moore never presented any such testimony but in fact stated in his legal brief at the hearing that it was the **Income Withholding Order** that constituted an attempt to modify, amend, or replace the Marital Settlement And Separation Agreement that he and Defendant Hinton executed on August 9, 1993 in the Missouri Court.  Plaintiff Moore stated**:**

> "I never at any time agreed in writing nor verbally to amend, modify, or replace the Marital Settlement And Separation Agreement.  **The Direct Withholding Order constitutes an attempt to amend, modify, or replace the Marital Settlement And Separation Agreement** that was executed on August 9, 1993 in the Circuit Court Of St. Louis County, Missouri 21st Judicial Circuit." (emphasis added) (attached Exhibit AA, pg 9)

**35(k)(5).**    Defendant M. Ruth O'Neill dishonestly & falsely indicated in her Decision that Kim Hinton testified that the payments she received "are listed as 'Richard Bardot and Associates'".

**35(k)(6).**    Defendant M. Ruth O'Neill dishonestly and falsely indicated in her Decision that an appeal was allegedly filed challenging the August 9, 1993 decision of the Circuit Court Of St. Louis County, Missouri, 21st Judicial Circuit, Case Number 64549.

**36.**    On information and belief, Defendant Hinton used much or most of the child support money she received for herself only, instead of for the care and welfare of her and Plaintiff Moore's children, based on a letter that Defendant Hinton's sister sent Plaintiff Moore in 2003, notifying that Defendant Hinton had abruptly abandoned the children and left no money nor the insurance card that Plaintiff Moore provided for their healthcare, and it is noted that she did this while she was still receiving child support payments from Plaintiff Moore. **(Exhibits 36, 37, 38, 39, 40)**

**37.**    Previously, in 2002, Plaintiff Moore had sent to St. Louis, Missouri a large sum of money in addition to his usual monthly child support payments, the amount of which exceeded his usual monthly child support payments for both his children and also for Defendant Hinton's needs after they were evicted from their residence and had to stay with his sister. **(Exhibit 41)**

**38.**   Instead of charging Defendant Hinton with child abandonment, child neglect, child cruelty, and child abuse, and alerting child protective services and law-enforcement authorities, Missouri Department of Social Services provided her financial assistance according to Defendant Hinton's testimony during a hearing that was held on August 15, 2022, which was recorded.

**39.**   Plaintiff Moore alleges that one or more of Defendant Hinton's co-conspirators employed or associated with Missouri Department of Social Services embezzled money from the Department to provide her financial assistance in exchange for her perpetual false testimony that Plaintiff Moore is delinquent in his child support obligations and owes many thousands of dollars.

**40.**   In Plaintiff Moore's Motion To Vacate during ligation in the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida, he alerted the Court that Defendant Hinton abandoned their children and left no money nor their insurance card for them while she was receiving support payments from Plaintiff Moore, and he informed the Court of other disturbing conduct ascribed to Defendant Hinton according to her sister who apprised Plaintiff Moore of same**:**

> "If it is true that Petitioner is engaged in prostitution and using illicit drugs as her sister informed Respondent, then he submits that the Court should re-examine this instant case very carefully before continuing to use the State of Florida's scarce & valuable resources assisting Petitioner – especially in light of the fact that Respondent has submitted clear & convincing evidence to the Court that proves that Petitioner committed a fraud during her perjured testimony at the May 26, 2011 hearing where she falsely claimed Respondent never made child support payments since the year 2000." **(Exhibit 3, footnote 1)**

**41.**   Defendants violated Federal Law and Missouri laws including but not limited to Missouri Statutes 452.340 and 452.350.3, and violated the Fifth Amendment and Fourteenth Amendment to the Constitution of the United States by conspiring to cause and actually causing illegal monthly withholdings and deductions from Plaintiff Moore's monthly social security retirement benefits

payments, which was done before Plaintiff Moore was ever given a hearing and was done without submitting a legitimate court support order to the Social Security Administration.

**42.**    In reference to the preceding Averments, Plaintiff Moore alleges that he was deprived of his constitutional right to a hearing at least 108 times, as monies were withheld and deducted from his social security retirement benefits payments on a monthly basis for at least 108 consecutive months without a hearing from 2013 through January 2023 and counting inasmuch the illegal monthly withholdings & deductions continue to this day, unabated, and that the total amount in controversy in this Complaint regarding what Defendants/conspirators claim that Plaintiff Moore supposedly owes in child support/arrearage is **$362,978.14** ($25,447.14 + $278,672.87 + $58,858.13 = **$362,978.14**) for which Plaintiff Moore denies and alleges that he has no past, present, nor future child support obligations, whatsoever. (_**See**_ **Averments #35(a), #35(c), and #35(i)).**

**43.**    Plaintiff Moore alleges that Defendants knowingly and willingly engaged and participated in this 42 USC 1985(3) conspiracy with their full knowledge that Plaintiff Moore had fulfilled all his child support obligations many years ago in 2006 and that in accordance to Missouri state law, Plaintiff Moore's obligation to pay child support terminated 13 years ago after his children were emancipated**:** His daughter, Khadijah, was emancipated 16 years ago in 2007 on her 18th birthday, and she is now 33 years old, and his son, Hakim, was emancipated 13 years ago in 2010 on his 18th birthday, and he is now 30 years old.

**44.**    These Defendants, through their conspiratorial conduct, sinister plots and schemes, and unlawful acts, subjugated and oppressed Plaintiff Moore and maliciously, directly and indirectly, deprived him of his rights to equal protection of all the laws and to due process of law and

prevented Plaintiff Moore from enjoying and exercising his rights, privileges, and immunities as a citizen of the United States of America in the same terms as White citizens.

**45.**    Plaintiff Moore alleges that a race-based invidiously discriminatory animus motivated the actions of the Defendants as alleged and described herein, and actionable cause is the treatment of Plaintiff Moore, a member of the African–American racial group wherein denial or deprivation of equal rights and protection of the laws by Defendants were clearly a product of racial bias.

**46.**    Actionable cause is also disenfranchisement and violation of Plaintiff Moore's rights under the Constitution of the United States by the Defendants, the animus and effect of which is to brutally & ruthlessly strike down Plaintiff Moore as an African–American to the end that he may not enjoy equality of rights and protection of the laws as contrasted with White citizens' rights.

**47.**    Defendants are not shielded by nor entitled to sovereign immunity nor qualified immunity because their unlawful conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.

**48.**    On information and belief, this 42 USC § 1985(3) conspiracy began about in 2006 with Defendants Hinton and Supportkids, Inc. and their unidentified non-defendant co-conspirators employed at Missouri Department of Social Services, and it continues to the present; Defendants Robert J. Knodell, Jennifer Renner, and M. Ruth O'Neill joined the conspiracy sometime in 2022.

**49.**    As a direct and proximate result of the illegal acts by Defendants against Plaintiff Moore as alleged and described in this Complaint and their violations of 42 USC § 1985, Plaintiff Moore sustained injuries and damages in the past, present, & future, which include but is not limited to loss of social security benefits and entitlements, loss of income, financial hardships, pain and

suffering, subjugation, intimidation, harassment, loss of concentration,  mental anxiety, insomnia, induced overwhelming fear of false arrest (which may occur at any time because of Defendants' illegal actions), embarrassment, humiliation, degradation, disgrace, loss of liberty, irreparable damage to good name, reputation & character and his standing in the community as an ordained Christian minister, academic author, scholar, former Military Police Officer/Government Agent, therapist, behavioral health/patient care technician, former medical specialist, former patient care specialist, counselor, manager, and was prevented, as a proximate cause, from fully performing his daily life activities and obtaining the full enjoyment of life and the pursuit of happiness.

**WHEREFORE,** Plaintiff Moore demands judgment against the Defendants, jointly and severally, for compensatory damages in the amount of $2,000,000 (TWO MILLION DOLLARS) plus costs, interest, disbursement of this action, attorney's fees, injunctive, declaratory, legal, and equitable relief, and such other relief the Court deems just, fair, and appropriate.

## COUNT II

### VIOLATIONS OF THE CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT (under the continuing violation doctrine)

(Violators sued in this Count: Robert J. Knodell, Jennifer Renner, M. Ruth O'Neill in their personal capacity, Kim Lynette Hinton, and Supportkids, Inc.)

**50.**     Plaintiff Moore re-alleges & incorporates Averments 13 thru 49 as though rewritten herein.

**51.**     Plaintiff Moore alleges that Defendants Robert J. Knodell, Jennifer Renner, M. Ruth O'Neill, Kim Lynette Hinton and Supportkids,Inc. are a group of individuals who form an association-in-fact enterprise within the meaning of 18 USC § 1961(4).

**52.**     Defendants are linked together, and they interactively associated together for the common purposes and specific intent to defraud and injure.

53.    Defendants comprise of an ongoing informal corrupt organization that use the U.S. mails, interstate wire communications, Internet, in-person interaction, and possibly additional methods of communication to carry out the group's objectives, and they function as a continuing unit with *open-ended continuity* to achieve the common purposes and specific intent of the group as described in the preceding Averment #52.

54.    Under 18 USC § 1962(c), it is a federal offense for any person who is associated with an enterprise that is engaged in or affects interstate or foreign commerce to conduct or to participate in the conduct of the affairs of that enterprise through a pattern of racketeering activity.

55.    Defendants, directly and indirectly, engaged in corruption and conducted or participated in the conduct of the affairs of the association-in-fact enterprise, which affects interstate commerce through a pattern of racketeering activity in violation of 18 USC § 1962(c).

56.    Through the commission of at least 5 predicate acts which are neither isolated, random, nor disconnected, Defendants knowingly and willingly, with corrupt intent, participated directly or indirectly in the operations, conduct, and affairs of the enterprise, and the predicate acts were a regular way of conducting the ongoing affairs of the enterprise.

57.    In reference to the preceding Averment, such predicate acts committed by Defendants include but may not be limited to: robbery in violation of 18 USC § 1951, honest services fraud in violation of 18 USC § 1346, mail fraud in violation of 18 USC § 1341, wire fraud in violation of 18 USC § 1343, and tampering with a party, victim, or witness in violation of 18 USC § 1512.

58.    Defendants' commission of the predicate acts and their agreement to commit predicate acts proximately caused injury to Plaintiff Moore who was the intended target of the predicate acts.

**59.**     Defendants also conspired to violate provisions of 18 USC § 1962(c) in blatant violation of 18 § USC 1962(d), specifically, Defendants, each of them, knowingly and willingly agreed in a "meeting of the minds" and/or by phone, in person, by mail or email to participate in the affairs of the enterprise and commit two or more of the above-identified predicate acts.

**60.**     Defendants knowingly & willingly, with corrupt intent, devised multiple plots and schemes of the conspiracy through a pattern of racketeering activity to defraud Plaintiff Moore and to injure him which include but may not be limited to**:** (1) a scheme to rob and steal money from Plaintiff Moore, (2) scheme to defraud him of his social security entitlement, (3) scheme to defraud him of his social security retirements payments and rob him of thousands of dollars, (4) scheme to defraud him of his Florida state unemployment benefits entitlement, (5) scheme to defraud and rob him of his Florida state unemployment benefits payments, (6) scheme to illegally garnish his wages when he was employed at Shands Jacksonville Medical Center located in Florida and rob him of his income,  (7) scheme to illegally garnish his income at his present employment at AdventHealth located in Florida and rob him of his income, (8) scheme to falsely charge him or falsely accuse him of owing up to more than $360,000 in child support/arrearage, (8) scheme to intimidate him and threaten him with false arrest, jail/prison, liens to his property and assets, and other actions if he refused pay up to more than $278,000, (9) scheme to send falsified, forged, and fraudulent documents to a Florida State court and a Florida State agency, which falsely claim Plaintiff Moore owes many thousands of dollars in child support/arrearage, (10) scheme to illegally abrogate or vitiate (without filing an appeal) the August 9, 1993 decision of the Circuit Court Of St. Louis County, Missouri, 21st Judicial Circuit, for Plaintiff Moore to pay the sum of $350 per month child support, (11) scheme to illegally abrogate or vitiate (without filing an appeal) the 2007 and 2012 decisions of the Circuit Court, Fourth Judicial Circuit, In And For Clay County, Florida, which

vacated the so-called support orders that the conspirators sent or caused to be sent to same Court for enforcement, (12) scheme to defraud Plaintiff Moore of his intangible right to honest services.

**61.** Defendants stood to gain in their continuous pattern and immoral practice of fraudulent and illegal activity by receiving or providing a contract, benefit, favor, income, and/or revenue, and they pose a continuous threat and danger to the general public, federal and state financial resources, and to the efficiency, integrity, and proper operation of the Missouri Department of Social Services Family Support Division, which the Defendants "hi-jacked" and corrupted.

**62.** In furtherance of the objects of this RICO conspiracy and conspiratorial plots & schemes, Defendants, two or more of them, knowingly, willfully, and with corrupt intent, used the Missouri Department of Social Services Family Support Division as a *vehicle*, which they corrupted, and used the U.S. Mail and interstate wire communications to carry out their fraudulent schemes and artifices as identified in Averment #60 that are of an ongoing nature and amount to or threaten the likelihood of continued criminal activity of *open-ended continuity* projecting into the future:

**63.** In violation of 18 USC § 1343 and § 18 USC § 1951, from 2006 through 2012, Defendants Hinton and Supportkids, Inc., with corrupt intent, agreed with one another and with one or more other conspirators to use and they did use interstate wire communications between the States of Missouri and Texas where they devised fraudulent schemes to rob Plaintiff Moore of his money.

**64.** In violation of 18 USC § 1341, 18 USC § 1951, and 18 USC 1512(b)(c), from 2006 through 2012, Defendants Hinton and Supportkids, Inc., with corrupt intent, agreed with one another and with one or more other conspirators to use and they did use the mails between the State of Missouri, the State of Texas, and the State of Florida to rob Plaintiff Moore of his money, by send- ing

fraudulent so-called support orders and fraudulent support calculations which falsely indicated that Plaintiff Moore owed many thousands of dollars in child support arrearage, and they agreed to use the mails to harass, intimidate and threaten Plaintiff Moore that if he did not pay up, that his income would be garnished, that liens would be placed on his property and assets, that his driver's license would be suspended, that a bench warrant would be issued to arrest him, and that other actions would be taken against him if he didn't pay up.

**65.** In violation of 18 USC § 1341, 18 USC § 1951, and 18 USC 1512(b)(c), in 2011, Defendant Hinton and Defendant Supportkids, Inc., with corrupt intent, agreed with one another and with one or more other conspirators to use and they did use the mails between the states of Missouri, Texas, and Florida (specifically the State of Florida Dept of Highway Safety & Motor Vehicles) to intimidate Plaintiff Moore and try to force him to "pay up" by sending fraudulent so-called support orders via the mails, which falsely indicated that Plaintiff Moore owed many thousands of dollars in child support arrearage, causing the State of Florida Department of Highway Safety & Motor Vehicles to issue an order to revoke, suspend, or cancel Plaintiff Moore's driver's license.

**66.** In violation of 18 USC § 1341, 18 USC § 1951, and 18 USC 1512(b)(c), about in August 2013 or earlier in 2013, Defendant Hinton and Defendant Supportkids, Inc., with corrupt intent, agreed with one another and with one or more other conspirators to use and they did use the mails between the states of Missouri, Texas, Florida, and possibly Washington DC to rob Plaintiff Moore of his money, and they agreed that the Social Security Administration would be ordered to deduct at least $377 per month from Plaintiff Moore's social security retirement benefits payments, based on the fraudulent correspondence it was sent in the mail which falsely indicated Plaintiff Moore

owed thousands of dollars child support/arrearage, and as of to date, more than $42,000 have been illegally deducted from Plaintiff Moore's monthly social security payments.

**67.** In violation of 18 USC § 1341, 18 USC § 1346 (Honest Services Fraud), 18 USC § 1951, and 18 USC 1512(b)(c), Defendants Hinton, Robert J. Knodell, and Jennifer Renner, with corrupt intent, agreed to use the mails between the State of Missouri and the State of Florida to send a fraudulent & fabricated Income Withholding Order to Plaintiff Moore's address and to the address of his employer, AdventHealth which falsely claimed Plaintiff Moore was delinquent in his child support obligations and falsely claimed that he owed owed $58,858.13 child support arrearage.

**68.** In violation of 18 USC § 1341, 18 USC § 1346 (Honest Services Fraud), 18 USC § 1951, and 18 USC 1512(b)(c), Defendants Hinton, Robert J. Knodell, Jennifer Renner, and M. Ruth O'Neill, with corrupt intent during official proceedings, agreed to use the mails between the State of Missouri and the State of Florida to send a fraudulent Decision against Plaintiff Moore to his address, which contained numerous false statements and concealment of evidence.

**69.** On information & belief, this RICO conspiracy began about in 2006 with Defendants Hinton and Supportkids, Inc. and their unidentified non-defendant co-conspirators employed at the Missouri Department of Social Services, and it continues to the present; Defendants Robert J. Knodell, Jennifer Renner, and M. Ruth O'Neill joined the conspiracy sometime in 2022.

**70.** As a direct and proximate result of the predicate acts committed by Defendants and by reason of the agreement by them to commit two or more predicate acts, Plaintiff Moore sustained injuries and damages in the past, present & future, which include but is not limited to loss of social security benefits and entitlements, loss of income in the past, present, and future, loss of earnings,

financial hardships, pain and suffering, oppression, subjugation, intimidation, harassment, loss of concentration, mental anxiety, insomnia, induced overwhelming fear of false arrest/imprisonment, embarrassment, humiliation, degradation, disgrace, loss of liberty, irreparable damage to good name, reputation & character and his standing in the community as an ordained Christian minister, academic author, scholar, veteran, former Military Police Officer/Government Agent, therapist, behavioral health/patient care technician, former medical specialist, former patient care specialist, counselor, manager, and was prevented, as a proximate cause, from fully performing his daily life activities and obtaining the full enjoyment of life and the pursuit of happiness.

**WHEREFORE,** Plaintiff Moore demands judgment against the Defendants, jointly and severally, in the amount of $2,000,000 and increased to $6,000,000 (SIX MILLION DOLLARS) pursuant to 18 USC § 1964(c) which provides for the recovery of treble damages, plus costs.

## COUNT III
## DEPRIVATION OF RIGHTS UNDER 42 USC § 1983

(Violators sued in this Count: Robert J. Knodell, Jennifer Renner, and M. Ruth O'Neill in their individual capacity, Supportkids, Inc.))

**71.**    Plaintiff Moore re-alleges & incorporates Averments 13 thru 70 as though rewritten herein.

**72.**    Defendants Robert J. Knodell, Jennifer Renner, M. Ruth O'Neill, and Supportkids, Inc. violated Plaintiff Moore's civil rights to Due Process and Equal Protection Under the Law secured by the Constitution of the United States or by Federal law and guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States to deprive Plaintiff Moore of property, due process of law, and due course of justice in violation of 42 USC § 1983.

**73.**    Defendants at all times relevant to this action were acting under color of state law.

**74.** In reference to the preceding Averment, Defendant Supportkids, Inc. acted under color of state law for § 1983 purposes, though it is a private actor, because it contracted with the Missouri Department of Social Services to provide collection services and garnish Plaintiff Moore's income.

**75.** Plaintiff Moore has a constitutionally protected property interest, and in fundamental fairness and the due course of justice, and Defendants deprived him of those interests without due process.

**76.** On or about May 19, 2022, without a hearing, Defendant Jennifer Renner sent a fraudulent Income Withholding Order, that she fabricated, to Plaintiff Moore's employer, and ordered it to withhold up to $980.97 per month from Plaintiff Moore's income, depriving Plaintiff Moore of his constitutional right to a hearing **before** he can be deprived of his property and depriving him of his constitutionally protected property interest and right to his own income, and Defendant Jennifer Renner attempted to deprive him of those rights and interest.

**77.** After Plaintiff Moore contested the fraudulent Income Withholding Order, Defendant M. Ruth O'Neill convened a hearing and subsequently rendered a written Decision on October 18, 2022, which contained numerous false statements, and she omitted and concealed in her Decision the numerous Exhibits that Plaintiff Moore presented which proved he did not owe any child support arrearage**:** C3, C4, D, D1, E1, E2, E3, E4, E5, E6, E7, F, G, G2, K1, L1, L2, M, M2, M3, M4, N, O, P, PP, Q, R, T, T1, and T2, depriving Plaintiff Moore of his constitutional right to an official Decision supported by evidence, his constitutional right to basic and fundamental fairness, his constitutional right to present evidence, and his constitutional right to controvert, by evidence and proof, every material fact which bears on the question of right during the proceedings.

**78.** Without a hearing, in 2007, Defendant SupportKids, Inc. sent fraudulent correspondence

to Plaintiff Moore's former employer, Shands Jacksonville Medical Center, and garnished Plaintiff Moore's income, without a hearing and without submitting a legitimate court support order, depriving him of his constitutional right to a hearing before he can be deprived of his property.

**79.**    Defendant Robert J. Knodell,  with his full knowledge that Plaintiff Moore owes no child support arrearage and that the Missouri Dept of Social Services illegally "ordered" the Social Security Administration to withhold and deduct monies from Plaintiff Moore's social security retirement benefits payments without a hearing and without submitting a legitimate court support order to the Social Security Administration, refused to stop the illegal withholdings and refused to refund and reimburse Plaintiff Moore, upon his request, all the monies that were illegally withheld and deducted from his social security benefits payments, further depriving Plaintiff Moore of his constitutional right to a hearing **before** he is deprived of his property and depriving him of his constitutionally protected interest and right to his social security retirement benefits entitlement.

**80.**    Defendants are not shielded by nor entitled to sovereign immunity nor qualified immunity because their unlawful conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.

**81.**    As a direct & proximate result of Defendants' deprivation of Plaintiff Moore's constitutional rights as alleged and described herein, and their violation of 42 USC § 1983, Plaintiff Moore sustained injuries and damages in the past, present, & future, which include but is not limited to loss of social security benefits and entitlements, loss of income, financial hardships, oppression, pain and suffering, subjugation, intimidation, harassment, loss of concentration,  mental anxiety, insomnia, induced overwhelming fear of false arrest/imprisonment embarrassment, shame, humiliation, degradation, disgrace, loss of liberty, irreparable damage to good name, reputation &

character and his standing in the community as an ordained Christian minister, academic author, scholar, decorated U.S. veteran, former Military Police Officer/Government Agent, therapist, behavioral health/patient care technician, former medical specialist, former patient care specialist, counselor, manager, and was prevented, as a proximate cause, from fully performing his daily life activities and obtaining the full enjoyment of life and the pursuit of happiness.

**WHEREFORE,** Plaintiff Moore demands judgment against the Defendants, jointly and severally, for compensatory damages in the amount of $2,000,000 (TWO MILLION DOLLARS) plus costs, interest, disbursement of this action, attorney's fees, injunctive, declaratory, legal, and equitable relief, and such other relief the Court deems just, fair, and appropriate.

## VII. *PUNITIVE DAMAGES*

**82.**    These extreme and outrageous unlawful acts by Defendants and their concerted unlawful & malicious conduct and sinister conspiratorial schemes, as alleged and described in the foregoing, are malicious, evil, corrupt, cruel, fraudulent, discriminatory, deceitful, vicious, brutal, ruthless, criminalizing, oppressive, subjugating, are beyond all possible bounds of human decency and utterly intolerable in a civilized society, and were done in callous and reckless disregard to Plaintiff Moore's federally protected rights, and Defendants, each of them, knew their illegal acts violated Federal Law and the Constitution of the United States, and they deliberately committed such acts anyway, which justify a punitive award against each of them to punish them, assessed as follows**:**

(a) **$2,000,000** against Defendants Hinton, Robert J. Knodell, Jennifer Renner, M. Ruth O'Neill, and Supportkids, Inc., concurrently, in Counts I and II.

(b) **$1,600,000** against Defendants Robert J. Knodell, Jennifer Renner, M. Ruth O'Neill, and Supportkids, Inc., concurrently, in Count III.

## **PRAYER FOR RELIEF**

Plaintiff Moore is entitled to the relief demanded in this Complaint and if relief is not granted, a travesty or miscarriage of justice will result, and Plaintiff Moore and his claims will be irreparably harmed and denied rights guaranteed under the Constitution and laws of the United States, the Civil Rights Act of 1871, the civil Racketeer Influenced and Corrupt Organizations Act, 42 USC § 1985(3), the Social Security Act, and all other pertinent Acts and laws enacted by Congress.

**WHEREFORE,** Plaintiff Moore prays that this Honorable Court**:**

**a).** Impanel a jury and award Plaintiff Moore the sum of TEN MILLION DOLLARS **($10,000,000)** in compensatory damages and THREE MILLION SIX HUNDRED THOUSAND DOLLARS **($3,600,000)** in punitive damages against the Defendants, jointly and severally;

**(b)** Award Plaintiff Moore $50,000 plus interest as a recovery of money that was withheld and deducted from his social security retirement benefits payments that continues, unabated;

**(c)** Declare that Plaintiff Moore owes no child support/arrearage in the past, present, and future in regard to Defendant Hinton and the Missouri Department of Social Services;

**(d)** Declare the May 19, 2022 Income Withholding Order in the amount of $58,858.13 as void and a complete nullity;

**(e)** Declare void and a complete nullity the so-called "order" or correspondence that was sent to the U.S. Social Security Administration, ordering it to withhold and deduct monies from Plaintiff Moore's monthly social security retirement benefits payments;

**(f)** Declare Defendants' conduct unlawful and in violation of Plaintiff Moore's rights;

**(g)** Enjoin Defendants from further unlawful acts as described in this Complaint;

**(h)** Issue an Order to immediately cease the withholding and deduction of monies from Plaintiff Moore's monthly social security retirement benefits payments;

(i) Award Plaintiff Moore liquidated and/or unliquidated damages, interest, disbursement of this action, reasonable attorney's fees, costs, injunctive, declaratory, legal, and equitable relief, and such other relief the Court deems just, fair, and appropriate.

**VERIFICATION**

I, ANDREW PEAL MOORE II hereby declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing statements in this Civil Complaint are true and correct to the best of my recollection. Executed on this 25th day of January, 2023.

**Signed** _____

Andrew Peal Moore II, *Pro Se*

Respectfully Submitted,

_____

Andrew Peal Moore II, *Pro Se*
Plaintiff
831 Semoran Park Drive
Winter Park, Florida 32792
Email: andrewmoore707@yahoo.com
Phone: (904) 418-0663

pg. 31